**COMMONWEALTH of Pennsylvania,**

**v.**

**Frederick W. PETROLL, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 18, 1997.

Filed June 18, 1997.

Barrie L. Wellener, Asst. Public Defender, Lancaster, for appellant.

Joseph C. Madenspacher, Dist. Atty., Lancaster, for Com., appellee.

Before POPOVICH and JOHNSON, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

This is an appeal from the judgment of sentence entered after a jury found appellant Frederick W. Petroll guilty of three counts of homicide by vehicle,[1] and the trial court found him guilty of one count each of failing to drive vehicle at safe speed[2] and careless driving.[3] We affirm.

The trial court has provided us with an accurate factual summary:

On April 21, 1995, Mr. Petroll caused the deaths of Douglas Harsh, his wife, Connie, and their infant son, Tyler, when he drove his tractor trailer into the rear of the Harsh vehicle which had stopped for traffic on Route 30 in Manheim Township. The impact of the collision caused the vehicle to burst into flames. The damage to the vehicle was so extensive that the Harshes were unable to escape their vehicle, which was destroyed by fire. All three occupants were pronounced dead at the scene. Dr. Wayne Ross, the Lancaster County Forensic Pathologist, performed autopsies on all three victims and determined the cause of death to be from thermal burning and smoke inhalation from the fire which resulted from the accident.

The impact also pushed the Harsh vehicle into the rear of another vehicle, setting off a chain reaction, which resulted in damage and injury to at least three other vehicles and the occupants. A police officer investigating the accident testified that, based upon his training as an Advanced Accident Investigator, the distance from the initial point of impact to the final resting position of the last vehicle was over 200 feet. Defendant's tractor trailer left skid marks of 96.5 feet prior to striking the Harsh vehicle and 69 to 83 feet of skid marks after impact.

Trial court opinion dated 11/7/96 at 1–2. On May 15, 1996, appellant was found guilty of the above-listed crimes. The trial court, on June 28, 1996, sentenced appellant to concurrent terms of imprisonment of not less than eighteen (18) months nor more than three (3) years for each count of homicide by vehicle. The summary offenses merged for sentencing purposes.

In this timely appeal from the judgment of sentence, appellant raises six issues. Initially, appellant claims that the trial court erred by denying his motion to suppress evidence seized from his truck. He also argues that the trial court improperly denied a motion in limine seeking to preclude the Commonwealth from introducing that evidence. Similarly, he contends that the trial court improperly granted the Commonwealth's motion in limine seeking to preclude evidence that

---

**1.** 75 Pa.C.S.A. § 3732.

**2.** *Id.* § 3361.

**3.** *Id.* § 3714.

PennDOT, after the accident, altered road signs in the area of the collision. Furthermore, appellant objects to the trial court's qualification of a Commonwealth witness as an accident reconstructionist. In addition, appellant claims that the prejudice engendered by the admission of photographs of the accident rendered them inadmissible. Appellant also challenges the sufficiency of the evidence supporting his conviction for homicide by vehicle.

█ Because a determination that the evidence was insufficient to support a conviction results in discharge, we shall begin by addressing that claim. *Commonwealth v. Bybel*, 531 Pa. 68, 71, 611 A.2d 188, 189 (1992). When presented with a challenge to the sufficiency of the evidence, an appellate court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined that all the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Zimmick*, 539 Pa. 548, 554, 653 A.2d 1217, 1220 (1995); *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 325–26, 673 A.2d 962, 965 (1996). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Rodriquez*, 449 Pa.Super. at 326, 673 A.2d at 965. It is within the province of the fact finder to determine the weight to be accorded each witnesses' testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Molinaro*, 429 Pa.Super. 29, 33, 631 A.2d 1040, 1042 (1993).

█ As stated, the jury found appellant guilty of homicide by vehicle. A person is guilty of homicide by vehicle, a first degree misdemeanor, if that person "unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic ... when the violation is the cause of death." 75 Pa.C.S.A. § 3732. Causation will only be found if the defendant's Motor Vehicle Code violation was a direct and substantial factor in the death of the victim and the fatal result was not extraordinary or remote. *Commonwealth v. Francis*, 445 Pa.Super. 353, 357–58, 665 A.2d 821, 823 (1995); *Commonwealth v. Nicotra*, 425 Pa.Super. 600, 607–08, 625 A.2d 1259, 1263–64 (1993) (when the defendant's conduct starts the chain of causation leading to the victim's death, criminal responsibility for the crime of homicide may properly be found). Further, the Commonwealth must establish that the defendant's conduct was criminally negligent or reckless. *Francis*, 445 Pa.Super. at 358, 665 A.2d at 823 (citing *Commonwealth v. Heck*, 517 Pa. 192, 201, 535 A.2d 575, 580 (1987)).

█ In this case, the Commonwealth charged appellant with the underlying Motor Vehicle Code violations of careless driving and driving his vehicle at an unsafe speed. Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense. 75 Pa.C.S.A. § 3714. Falling asleep while operating an automobile manifests a "careless disregard for the safety of persons or property" and therefore constitutes careless driving under section 3714. *Commonwealth v. Cathey*, 435 Pa.Super. 162, 166, 645 A.2d 250, 252 (1994) (driver who fell asleep while operating his vehicle, crossed over into the oncoming lane of traffic, and struck another vehicle was found guilty of careless driving). "It is impossible to fathom how one who falls asleep while operating an automobile, thus blindly propelling thousands of pounds of steel and glass at tens of miles per hour, cannot be guilty of a degree of negligence beyond mere 'absence of ordinary care.'" *Id.* at 166, 645 A.2d at 251.

Just after the accident in this case, appellant confided to Carla Cwynar, an employee with the Manheim Township Ambulance service, that he had dozed briefly and that he had problems stopping his truck when he awoke. N.T. 5/10/96 at 258. According to Robert Reeber, an eyewitness to the collision, just before impact, the driver was slouched in the seat, leaning toward the right with his head down. N.T. 5/9/96 at 90, 110. Mr. Reeber speculated that appellant may have been looking downward to adjust the

radio or to retrieve something from the floor. N.T. 5/9/96 at 90.

■ The jury was free to credit Ms. Cwynar's assertion that appellant had fallen asleep. By falling asleep at the wheel, thereby demonstrating negligence beyond mere absence of ordinary care, appellant started the chain of causation that led to the victims' deaths. The evidence was therefore sufficient to support appellant's homicide by vehicle convictions. *See Commonwealth v. Eichelberger,* 364 Pa.Super. 425, 428–29, 528 A.2d 230, 232 (1987) (evidence that the defendant, who suffered from lack of sleep and had a blood alcohol content of 0.09%, drove his vehicle on the wrong side of the roadway, was sufficient to permit an inference of criminal negligence and to support his conviction for homicide by vehicle). Accordingly, we need not here address the other vehicle code violation charged, failing to drive at safe speed.

■ We shall next consider the denial of appellant's suppression motion. When reviewing the ruling of a suppression court, an appellate court must first ascertain whether the record supports the suppression court's factual findings and then assess the reasonableness of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Diaz,* 442 Pa.Super. 238, 246, 659 A.2d 563, 567 (1995), *appeal denied,* 542 Pa. 658, 668 A.2d 1123 (1995). When the defendant appeals, we may consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, read in the context of the record as a whole, remains uncontradicted. *Id.* If the evidence, when so viewed, supports the suppression court's factual findings, we may only reverse if the legal conclusions drawn therefrom are in error. *Id.* The suppression court bears exclusive responsibility for assessing the credibility of witnesses and determining the weight to be accorded to their testimony. *Commonwealth v. Dorsey,* 439 Pa.Super. 494, 498, 654 A.2d 1086, 1088 (1995). Although we are bound by findings of fact that are supported by the record, we are not bound by legal conclusions drawn from those facts. *Id.*

Appellant in this case claims that the trial court improperly denied his motion to suppress evidence seized from his truck, specifically, a radar detector, log book, brown bag, and bank deposit bag. The parties developed the factual background for this motion at a suppression hearing:

> After the accident on Route 30, police arrived at the scene. Sergeant Dale McCurdy of the Manheim Township Police Department and supervising officer at the scene, entered Mr. Petroll's tractor trailer without his consent. Sgt. McCurdy testified that he went inside the cab to check to make sure that the brakes of the truck were on. At that time, Sgt. McCurdy noted that there was a radar detector in defendant's truck. There was no indication that the detector was activated at that time. Sgt. McCurdy did not seize any items from the truck.
>
> The truck was subsequently impounded at Hammer's Towing. Officer Jeffrey Jones of the Manheim Township Police Department went to Hammer's Towing on May 16, 1995 and confiscated the radar detector from the truck. This was done without a warrant and without defendant's consent.
>
> [Before the truck was impounded,] Officer Gary Metzger of the Lancaster City Police Department removed from the cab a brown bag, a log bag and the bank deposit bag.

Trial court opinion dated 11/7/96 at 4–5 (citations to the record omitted).

■ Although the quoted portion of the trial court's opinion does not so reflect, we stress that Sergeant McCurdy first viewed the radar detector through the truck's front windshield while he was standing on the public highway in front of appellant's truck. The warrantless seizure of a piece of evidence that is in plain view is permissible if the evidence is seen from a lawful vantage point and if the incriminating nature of the evidence is immediately apparent to the viewer. *Commonwealth v. Ellis,* 541 Pa. 285, 297, 662 A.2d 1043, 1049 (1995). "[T]he observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence." *Id.* To determine

whether probable cause exists, a court will view the totality of the circumstances, considering whether the facts and circumstances existing at the time of the seizure would have led a person of reasonable caution to believe that the evidence in question was incriminating in nature. *Id.* at 298, 662 A.2d at 1049–1050.

■ As stated, the officer viewed the radar detector on the truck's dashboard from his lawful vantage point outside of the truck. *See Commonwealth v. Wells,* 441 Pa.Super. 272, 657 A.2d 507 (1995), *appeal denied,* 542 Pa. 668, 668 A.2d 1131 (1995) (after lawfully stopping the suspect, the officer viewed on the front seat of the suspect's car a supermarket bag containing orange-tinted packets and a ziplock bag containing a white chunky substance; the officer properly seized that bag under the plain view doctrine). He immediately recognized that possession of a radar detector constitutes a violation of federal law. 49 C.F.R. § 392.71 ("No driver shall use a radar detector in a commercial motor vehicle, or operate a commercial motor vehicle that is equipped with or contains any radar detector"). *See also* 67 Pa.Code §§ 229.181, 231.181 (incorporating by reference 49 C.F.R. § 392.71); 67 Pa.Code § 229.3 (incorporating by reference 49 C.F.R. § 390.5 (relating to definition of radar detector)). The incriminating nature of the evidence was, therefore, immediately apparent to the officer. Accordingly, the warrantless seizure of the radar detector at that point would have been permissible under the plain view doctrine. We are not persuaded that the seizure became impermissible because it was delayed until a time when the truck was impounded.

We shall now address the propriety of the seizure of the driver's log book and bank deposit bag. Sergeant Gary Metzger entered the cab of the truck to ensure that the brake was set, as did Sergeant McCurdy. While there, he observed and confiscated the driver's log book, the bank deposit bag and the brown bag. Appellant, relying on *Com-*

*monwealth v. White,* maintains that the warrantless seizure of those items was improper because Sergeant Metzger did not have probable cause to believe that the truck contained evidence of criminal activity:

> [P]olice may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by police; and (3) police have obtained this information in such a way that they could not have secured a warrant for the search, *i.e., there are exigent circumstances.*

*Id.,* 543 Pa. 45, 51–52, 669 A.2d 896, 900 (1995) (emphasis in original). The Commonwealth distinguishes this search from those contemplated in *White* because the object of the instant search was a commercial vehicle. We must therefore determine whether Sergeant Metzger's warrantless entry into the commercial vehicle and seizure of the driver's log, the bank deposit bag and the brown bag violated appellant's right to be free from unreasonable searches and seizures.[4]

■ The Fourth Amendment's prohibition against unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). The owner or operator of a business, therefore, has an expectation of privacy in commercial property that society is prepared to consider to be reasonable. *Id.* That expectation exists not only with respect to traditional police searches conducted to investigate violations of criminal laws but also with respect to administrative inspections designed to enforce regulatory statutes. *Id.,* 482 U.S. at 699–700, 107 S.Ct. at 2642–43. As such, a warrant is required to conduct an administrative inspection unless one of the exceptions to the warrant requirement applies.[5]

---

4. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend IV.

5. We note that the level of probable cause necessary to justify the issuance of a warrant differs in light of the nature of the search that is sought. *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 538, 87 S.Ct. 1727,

*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978).

■■■ The United States Supreme Court has recognized an exception to the warrant requirement for administrative inspections in "closely regulated" businesses. *Burger*, 482 U.S. at 693, 107 S.Ct. at 2638–39. *See also Donovan v. Dewey*, 452 U.S. 594, 598, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981) ("[L]egislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment"). The greater latitude to conduct warrantless inspections of commercial property reflects the idea that although the owner or operator of a business has a reasonable expectation of privacy in commercial property, that expectation is different from, and less than, a similar expectation in an individual's home. *Burger*, 482 U.S. at 699–700, 107 S.Ct. at 2642–43; *Donovan v. Dewey*, 452 U.S. at 598, 101 S.Ct. at 2537–38. The expectation is particularly attenuated in commercial property employed in "closely regulated" industries. *Burger*, 482 U.S. at 700, 107 S.Ct. at 2642–43.

■■■ Accordingly, "where the privacy interests of the owner [or operator of com-mercial premises in a 'closely regulated' industry] are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Id.*, 482 U.S. at 702, 107 S.Ct. at 2643–44. A warrantless inspection of a pervasively regulated business is reasonable if three criteria are satisfied:

[1] [T]here must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made....

[2] [T]he warrantless inspection must be "necessary to further [the] regulatory scheme."

....

[3] "[T]he statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." ... [Specifically,] the regulatory statute ... must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

1735–36, 18 L.Ed.2d 930 (1967) (warrantless search of residence under housing code). Probable cause is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness. *Id.*, 387 U.S. at 534, 87 S.Ct. at 1733–34 (1967). To determine whether a search is reasonable, a court must focus on the governmental interest which is offered to justify the official intrusion. *Id.*, 387 U.S. at 534–35, 87 S.Ct. at 1733–34 (1967). In a criminal investigation, the government may have an interest in recovering specific stolen goods or contraband, and the police may obtain a warrant to search if they have probable cause to believe that the goods or contraband will be uncovered in a particular dwelling. *Id.*, 387 U.S. at 535, 87 S.Ct. at 1734 (1967). To the contrary, when a search or inspection is aimed at securing compliance with minimum physical standards for private property, the government has an interest in preventing the development of conditions hazardous to public health and safety. Probable cause to issue a warrant to inspect exists if reasonable legislative or administrative standards for conducting that inspection are satisfied. *Id.*, 387 U.S. at 538, 87 S.Ct. at 1735–36 (1967). The *Camara* court emphasized that varying the probable cause test from the standard applied in criminal cases does not lessen the overall protections of the Fourth Amendment:

> The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justified the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant. Such an approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area. It merely gives full recognition to the competing public and private interests here at stake and, in so doing, best fulfills the historic purpose behind the constitutional right to be free from unreasonable government invasions of privacy.

*Id.*, 387 U.S. at 538–39, 87 S.Ct. at 1735–36 (1967). (citations omitted). *See also Burger*, 482 U.S. at 702, 107 S.Ct. at 2643–44 (citations omitted) ("Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application in this context ....").

*Id.*, 482 U.S. at 702–03, 107 S.Ct. at 2644 (citations omitted). *See, e.g., Donovan v. Dewey,* 452 U.S. at 603, 101 S.Ct. at 2540 (warrantless inspections required by the Mine Safety and Health Act do not offend the Fourth Amendment: there is a substantial federal interest in improving the health and safety conditions in the mining industry; Congress was aware of the hazardous conditions and poor health and safety record existing in that industry; a system of warrantless inspections is necessary to properly enforce the regulations; and the regulatory scheme provided a constitutionally adequate substitute for a warrant); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (warrantless inspections mandated under comprehensive and predictable inspection scheme posed only limited threats to gun dealer's expectation of privacy as gun dealers who choose to engage in that pervasively regulated business do so with the knowledge that their records, firearms and ammunition will be subject to effective inspection); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (long history of governmental regulation subjected liquor industry to close supervision and inspection).

 Before reaching the criteria set forth in *Burger, supra,* we must determine whether commercial trucking is a closely regulated industry. An industry is closely regulated if the " 'regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.' " *Burger,* 482 U.S. at 705 n. 16, 107 S.Ct. at 2645 n. 16 (quoting *Donovan v. Dewey,* 452 U.S. at 600, 101 S.Ct. at 2539). Federal regulations permeate many aspects of the commercial trucking industry including driver qualifications, motor vehicle parts and accessories, accident reporting, itinerary reporting, drivers' hours of service, motor vehicle inspection, repair and maintenance, transportation of hazardous materials, and other safety issues. *United States v. Dominguez–Prieto,* 923 F.2d 464 (6th Cir. 1991), *cert. denied,* 500 U.S. 936, 111 S.Ct. 2063, 114 L.Ed.2d 468 (1991) (citing 49 C.F.R. §§ 101–399). The Pennsylvania Code

and the Motor Vehicle Code address many of these same areas, often adopting by reference the federal regulations. *See, e.g.,* 67 Pa.Code § 231.1 *et seq.*; 75 Pa.C.S.A. § 1601 *et seq.* (relating to driver qualifications). In light of the extensive regulation covering this industry, common carriers cannot help but be aware that their property will be subject to periodic inspections. Thus, they participate in a closely regulated industry.

 As an additional preliminary matter, we note that the *Burger* Court did not specifically identify a commercial vehicle as a commercial premises. *Burger,* 482 U.S. at 693, 107 S.Ct. at 2638–39 (warrantless search of an automobile junkyard). *See also Colonnade,* 397 U.S. 72, 90 S.Ct. 774 (warrantless search of a catering business); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (warrantless inspection of pawn shop premises). Nevertheless, we believe that the *Burger* criteria are applicable to the instant inspection of the commercial truck. *See V–1 Oil Co. v. Means,* 94 F.3d 1420 (10th Cir.1996) (concluding that the random detention and inspection of a vehicle used in a closely regulated industry must meet the same requirements as those enunciated in *New York v. Burger* and pertaining to warrantless regulatory searches of business premises).

The statutory scheme relied upon by the trial court to justify the warrantless search of appellant's commercial vehicle consists of both federal and state elements. The Pennsylvania Motor Vehicle Code enables police having probable cause to believe that a vehicle or driver are unsafe or not in compliance with the law or PennDOT regulations to inspect the vehicle, driver, and documents:

(a) Authority to inspect.—

. . . .

(3) Probable cause.—

(i) Any State Police officer or qualified Commonwealth employee having probable cause to believe that a vehicle, driver, documents, equipment or load are unsafe, not equipped as required or otherwise not in compliance with the law or regulations may inspect the vehicle, driver, documents, equipment or load.

(ii) Any police officer having probable cause to believe that a vehicle or its equipment is unsafe, not equipped as required or otherwise not in compliance with the law or regulations may inspect the vehicle or its equipment.

75 Pa.C.S.A. § 4704(a). The Vehicle Code further authorizes a police officer having probable cause to believe that a vehicle may be in violation of the law or Commonwealth regulations to inspect and copy documents and otherwise to ensure compliance with the law and Commonwealth regulations:

(d) Authority of police and qualified Commonwealth employees. **Any police officer or qualified Commonwealth employee shall be authorized to detain and inspect any sealed or unsealed vehicle,** container or shipment **which they have probable cause to believe may be in violation of the law or Commonwealth regulations while in transit** or in maintenance facilities, terminals or other public or private property to ascertain if commodities or materials are being unloaded, stored or transported in an illegal manner; to inspect contents; **to inspect and copy documents and otherwise to ensure compliance with the law and Commonwealth regulations,** except that only State Police and qualified Commonwealth employees shall have the authority to enforce any law or regulation pertaining to drivers, including, but not limited to, minimum driver qualifications, maximum hours of service and driver records, or pertaining specifically to hazardous materials....

75 Pa.C.S.A. § 4704(d) (emphasis added). *See also* 67 Pa.Code § 229.364 ("As provided in 75 Pa.C.S. § 4704 ... qualified Commonwealth employes, State Police officers and local officers are authorized to inspect motor carrier vehicles involved in interstate commerce"):

Both federal and Commonwealth regulations require drivers of commercial vehicles to maintain log books. 67 Pa.Code § 229.343 (adopting by reference 49 C.F.R. § 395.8). In those log books, drivers of commercial motor vehicles must maintain an up-to-date record of travel time, departure and destination points, and duty status for each 24 hour period. 49 C.F.R. § 395.8. Failing to complete the record of duty activities, failing to preserve a record, or making false reports in connection with such duty activities may subject a driver to prosecution. *Id.* A driver must "retain a copy of each record of duty status for the previous 7 consecutive days which shall be in his/her possession and available for inspection while on duty." *Id.* § 395.8(k)(2). According to the trial court, the officer acted under the foregoing statutory and regulatory scheme by entering the cab of the truck and seizing the log book and related documents.

■ Under *Burger*, a "substantial" government interest must underlie the regulatory scheme. The United States Congress has promulgated commercial vehicle safety regulations for the purpose of promoting the safe operation of commercial motor vehicles, minimizing dangers to the health of operators of commercial motor vehicles and other employees whose employment directly affects motor carrier safety, and ensuring increased compliance with traffic laws and with the commercial motor vehicle safety and health regulations and standards. 49 U.S.C.A. §§ 31131 *et seq. See* 75 Pa.C.S.A. § 6103(c) (authorizing PennDOT "to adopt by reference any Federal statute or regulation or provision thereof relating to vehicles or drivers, including, but not limited to, minimum driver qualifications, maximum hours of service, loading, unloading, hazardous material, operation, equipment, records and inspection"); 67 Pa. Code §§ 229.411, 231.411 (adopting "as statements of policy, interpretations of the Federal Motor Carrier Safety regulations ..."). Similarly, the expressed purpose of The Uniform Commercial Driver's License Act, which addresses driver qualifications for commercial drivers and employer responsibilities, is to implement the Commercial Motor Vehicle Safety Act of 1986 and to reduce or prevent commercial motor vehicle accidents, fatalities and injuries. 75 Pa.C.S.A. § 1602. Likewise, our court has articulated an interest in "protect[ing] the safety of highway users, promot[ing] efficient movement of traffic, and protect[ing] the highways." *See e.g., Commonwealth v. Pollock*, 414 Pa.Super. 66, 74, 606 A.2d 500, 503–04

(1992); *Commonwealth v. Berry,* 305 Pa.Super. 8, 14, 451 A.2d 4, 7 (1982) (balancing privacy rights of truck operators against the government's interest in maintaining safe highways and upholding the constitutionality of a stop and weighing of a truck based on officer's articulable suspicion that the truck was overweight). Accordingly, a substantial governmental interest lies at the heart of the challenged statutory and regulatory scheme.

■ Inspections of such records as a driver's log book and related documents further the government's interest in the safe operation of motor vehicles. A driver's log book reveals whether a driver has exceeded the maximum hours of service. Regulations governing maximum hours of service are intended to combat driver fatigue, a highway peril. The bank deposit bag in this case contained toll receipts, fuel receipts, and delivery receipts. The brown bag contained loading slips, which disclosed the location of the truck driver at specified dates and times. Those documents can reveal a driver's hours of service as well as the times, dates and distances traveled. Accordingly, the related documents could be used to assess the accuracy of appellant's log book. After comparing the documents contained in the bags with the log book, Dennis McGee, a United States Department of Transportation special agent responsible for state enforcement of commercial motor vehicle and driver safety, concluded that appellant had routinely, and on the days preceding the collision, falsified the log to hide violations of the maximum hours of service rules. N.T. 5/10/95 at 318.

Forcing an inspector to secure a warrant before inspecting the covered records or documents of motor vehicle carriers who can pass quickly through the relevant jurisdiction might alert the drivers to the impending inspection, providing non-compliant drivers with an opportunity to update a stale record or to adulterate incriminating records, thereby frustrating the purposes of the regulations *i.e.,* to detect and deter safety violations. *See Dominguez–Prieto,* 923 F.2d at 469 (to successfully regulate and control common carriers in the trucking industry and the types of cargo they transport, the state must be able to conduct warrantless inspections to check the cargo frequently as trucks pass quickly in and out of the jurisdiction of the enforcement agencies); *V–1 Oil,* 94 F.3d at 1426 (random truck safety inspections are necessary to further the state's interests in regulating the transportation of hazardous materials by motor carriers on the highways). *See also Donovan v. Dewey,* 452 U.S. at 600, 101 S.Ct. at 2538–39 (warrantless inspection was necessary to further the regulatory scheme: forcing mine inspectors to obtain a warrant before every inspection might alert mine owners or operators to the impending inspection, thereby frustrating the purposes of the Mine Safety and Health Act, that is, to detect and deter safety and health violations).

■ *Burger* additionally requires that the regulatory scheme provide an adequate substitute for a warrant by performing the two basic functions of a warrant: (1) to advise the owner of the commercial premises that the search is being made under the law and has a properly defined scope, and (2) to limit the discretion of the inspecting officers. *Burger,* 482 U.S. at 703, 107 S.Ct. at 2644. The first function is satisfied if "[t]he statute [is] sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Id.* The statutes and regulations at issue in this case inform a driver that inspections may be conducted under certain circumstances to ensure compliance with the law and Commonwealth regulations. One of those regulations mandates the maintenance of a driver's log book and lists the information required to be recorded in the log and the length of time the driver must maintain the log for inspection. The statute at issue specifies who may conduct the inspection, a police officer or qualified Commonwealth employee as defined by that statute. *See V–1 Oil,* 94 F.3d at 1427 (statute and regulations that authorized highway patrol officers to enter upon and inspect motor carrier's vehicles in operation constituted an adequate substitute for a warrant; in light of the pervasive regulations, a motor carrier transporting hazardous waste cannot help

but be aware that his property will be subject to periodic inspection).

▮▮ Further, the regulatory scheme limits the discretion of the inspectors by restricting the time, place and scope of the inspection. *Burger*, 482 U.S. at 703, 107 S.Ct. at 2644. We recognize the difficulty in regulating the time of inspection for commercial carriers. *See V–1 Oil*, 94 F.3d at 1427 (recognizing that the time of inspection was not feasibly statutorily regulated as trucks operate around the clock); *Dominguez–Prieto*, 923 F.2d at 470 (same). Nevertheless, the regulations limit the availability of the contemplated documents to periods when the driver is on duty.

More importantly, and in contrast to *Burger*, an officer's discretion is limited by the requirement of probable cause. Under section 4704(d), the officer must have probable cause to believe that the vehicle may be in violation of the law or Commonwealth regulations while in transit or in maintenance facilities, terminals or other public or private property. 75 Pa.C.S.A. § 4704. Similarly, under section 4704(a)(3)(i), an officer must have probable cause to believe that a vehicle, driver, documents, equipment or load are unsafe or otherwise not in compliance with the law or PennDOT regulations before inspecting the vehicle, driver, documents, equipment or load. *Id.* § 4704.

The statutory regulatory scheme in *Dominguez–Prieto* likewise specified the level of suspicion required to justify inspection for compliance with state and federal safety regulations. In that case, the Tennessee Code empowered that state's Public Service Commission to license, supervise and regulate every motor carrier in the state. Enforcement officers, upon reasonable belief that any motor vehicle is being operated in violation of any provisions of the Tennessee Code, are authorized to inspect certain documents. The scheme thereby limited the officer's discretion by restricting his authority to investigate motor vehicles being operated in violation of the Code. The scheme in this case similarly limits an officer's discretion.

▮▮ Here, the officer was investigating a collision that resulted in three deaths and involved five vehicles. The tractor trailer struck from behind an automobile that had been stopped in traffic. Weather conditions were not a factor. Based on the evidence, appellant should have seen the stopped traffic from a distance of 1500 feet. Nevertheless, the length of the skid marks indicated that appellant began braking, or that the brakes responded, when the front of appellant's truck was thirty-six (36) feet from the victims' car. These factors raised questions as to appellant's speed, care, and maintenance of the truck's equipment.

▮▮ As a result, the officer had probable cause to believe that the vehicle or driver may have been in violation of the law or Commonwealth regulations while in transit. Similarly, he had probable cause to believe the vehicle or driver was unsafe or otherwise not in compliance with the law or regulations. The officer's warrantless search of the cab of the tractor-trailer to inspect the log and related documents would therefore have fallen within the exception to the warrant requirement for inspections of closely regulated businesses. By seizing that evidence, however, the officer exceeded the authority granted to him by the statutory scheme.[6] As explained, the statutory scheme authorizes inspections of the seized property under certain circumstances. Because the statutory scheme does not contain any language sanctioning the seizure of such evidence, however, drivers of commercial vehicles are not on notice that those documents may be seized.[7]

---

6. "The *Colonnade* decision illustrates the importance of ascertaining whether a statute authorizes a search and if it does, the permissible extent of the search, *i.e.*, whether a particular warrantless search of a business has been sanctioned by the legislature." *Commonwealth v. Black*, 365 Pa.Super. 502, 510, 530 A.2d 423, 427 (1987), *appeal dismissed*, 520 Pa. 115, 552 A.2d 1046 (1989).

7. Allowing such a warrantless seizure, in the absence of an exception to the warrant requirement, would lead to unintended consequences, which would be detrimental to commercial carriers. For example, an officer who is authorized by the statutory scheme to inspect such documents as a driver's log book but who does not uncover any violation of Title 75 or of the applicable regulations may nevertheless retain the driver's log book to scour it for some violation

As such, the officer was required to obtain a warrant before seizing the log books and related documents from the cab of appellant's truck unless some other exception to the warrant requirement applied. Consequently, we conclude that the trial court erred by refusing to suppress the driver's log book and related documents.

A new trial will not be warranted if that error was harmless. An appellate court may deem an error harmless if convinced beyond a reasonable doubt that "(1) the error did not prejudice the defendant or the prejudice was *de minimis;* or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and 'the uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.' " *Commonwealth v. Moore,* 534 Pa. 527, 544–45, 633 A.2d 1119, 1128 (1993), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (quoting *Commonwealth v. Story,* 476 Pa. 391, 412, 383 A.2d 155, 166 (1978)).

■ As explained, the Commonwealth used the log books and related documents to demonstrate to the jury that appellant had routinely, and on the days preceding the collision, falsified the log to hide violations of the maximum hours of service rules. Absent that evidence, the jury was left with appellant's admission to having fallen asleep while driving and an eyewitness' description of appellant's downward-slumping position just before the collision. Further, an accident reconstructionist explained that although appellant should have seen the stopped traffic from a distance of 1500 feet, he did not begin braking, or the brakes did not respond, until his truck was only thirty-six (36) feet from the victims' car. We are satisfied that the properly admitted and uncontradicted evidence of guilt was so overwhelming, and the prejudicial effect of the improperly admitted documents so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. *See, e.g., Commonwealth v. Iannelli,* 430 Pa.Super. 402, 634 A.2d 1120 (1993), *appeal denied,* 537 Pa. 630, 642 A.2d 483 (1994) (evidence of guilt was so overwhelming that the defendant would have been convicted even absent evidence that the police had allegedly improperly seized from the defendant's residence). Accordingly, we deem any error resulting from the admission of the challenged documents to be harmless.

We note that our learned colleague Judge Johnson contests the very applicability of the exception to the warrant requirement for inspections of pervasively regulated industries. He contends that the instant search was instead the product of a criminal investigation. Under the dissent's view, the officer, upon reaching the scene of an automobile collision involving a commercial vehicle in which three people have perished in an inferno, was required to ask himself whether he intended to conduct an administrative or criminal search. As part of their duties, the officers were required to secure the accident scene, ensure the presence of medical assistance, and gather evidence in light of the potential for accidental or purposeful destruction to determine the cause of the accident. Even if the officers suspected appellant of causing the collision, they were required to, and did, investigate other potential causes by, for example, inspecting the truck for mechanical failure. *Compare Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (firefighter *who suspected arson* did not need a warrant to remain in a building for a reasonable time to investigate the cause of a fire after it had been extinguished because the exigency justifying the warrantless entry to fight the fire did not end with the dousing of the last flame; fire officials are charged

not immediately apparent to him. In light of the mandatory nature of those books, the officer could thereby effectively prevent the driver from continuing about his business. *See, e.g., Commonwealth v. Richards,* 406 Pa.Super. 149, 593 A.2d 1279 (1991) (failure to maintain log book constitutes a violation of 75 Pa.C.S.A. § 4107(b)(2) (prohibiting any person from operating on any Commonwealth highway any vehicle that is in violation of department regulations)).

not only with extinguishing fires, but with finding their causes, and a prompt determination of a fire's origin may be necessary to prevent its recurrence and to preserve evidence from intentional or accidental destruction). Had the officer entered the truck and inspected the relevant documents to ensure compliance with the law and Commonwealth regulations, he would have been fulfilling his duties as one of the first law enforcement officials to arrive at the scene. We cannot agree with the dissent's suggestion that the officers used the foregoing statutory and regulatory scheme merely as a pretext to gather evidence against appellant for a criminal investigation. *Compare Commonwealth v. Slaton*, 530 Pa. 207, 608 A.2d 5 (1992) (search was not executed under an administrative scheme: statute that authorized Department of Health officials to inspect a pharmacy upon stating their purpose was not applicable because the officials' sole purpose from the beginning was to gather additional information for an ongoing criminal investigation).

Further, we cannot agree that the administrative inspection, which would have been valid had the officer not exceeded the authority granted to him under the statutory scheme, is invalid "because the ultimate purpose of the regulatory statute pursuant to which the search is done ... is the same as that of penal laws, with the result that the inspection may disclose violations not only of the regulatory statute but also of the penal statutes." *Burger*, 482 U.S. at 693, 107 S.Ct. at 2639. The *Burger* Court addressed this very question. In that case, police officers entered a junkyard located in New York to conduct an inspection in accordance with a state statute. As permitted by the terms of that statute, the police asked the owner to see his license and police book, that is, the record of the automobiles and vehicle parts in his possession. After the owner denied having those documents, the police inspected the premises and determined that several vehicles and parts located in the junkyard had been reported stolen. The police thereafter arrested the owner and charged him with possession of stolen property, a criminal violation, and unregistered operation as a vehicle dismantler, a violation of the inspec-

tion provision. *Id.*, 482 U.S. at 694, 107 S.Ct. at 2639.

The Court of Appeals concluded that the inspection statute improperly authorized searches undertaken solely to uncover evidence of criminality rather than to enforce a comprehensive regulatory scheme. *Id.*, 482 U.S. at 698, 107 S.Ct. at 2641–42. It identified the purpose of the regulatory statute as locating violations of the criminal statutes prohibiting possession of stolen property and enforcing penal sanctions. *Id.*, 482 U.S. at 698, 107 S.Ct. at 2641–42.

■ The United States Supreme Court recognized that a state can address a major social problem through an administrative scheme as well as through penal sanctions but do so through different methods. *Id.*, 482 U.S. at 712, 107 S.Ct. at 2648–49. The penal laws implicated in *Burger* addressed the economic burdens created by automobile theft by punishing possession of stolen property. The administrative scheme addressed the state's interest in eliminating automobile theft by imposing regulations to prevent automobile junkyards from becoming markets for stolen vehicles and parts and to help trace the origin and destination of vehicle parts. *Id.*, 482 U.S. at 709, 107 S.Ct. at 2647. The *Burger* Court refused to deem the administrative scheme unconstitutional simply because, in the course of enforcing it, an inspecting officer may discover evidence of crimes, besides violations of the scheme itself. *Id.*, 482 U.S. at 716, 107 S.Ct. at 2651 (citing *United States v. Biswell, supra* (pawn shop operator was charged not only with a violation of the recordkeeping provision under which the inspection was conducted, but also with other violations detected during the inspection)). "The discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect." *Id.*

In this case, the government promulgated the administrative scheme in part to protect the safety of highway users, promote efficient movement of traffic and protect the highways. The penal laws implicated in this case address the issue of highway safety by

punishing those who unintentionally cause the death of another person while engaged in the violation of the laws applying to the operation or use of a vehicle when that violation is the cause of death. *See* 75 Pa.C.S.A. § 3732. That the evidence gleaned from the inspection of the commercial vehicle could be used, in part, to buttress the Commonwealth's case against appellant for the summary offenses underlying his homicide by vehicle charge would not render the inspection illegal.

We now turn to the remaining evidentiary questions raised by appellant. Appellant contends that the trial court erred by denying his motion in limine to preclude admission of the radar detector and log books because those items constituted evidence of prior crimes.[8] The admission into evidence of prior bad acts is within the sound discretion of the trial court and may be reversed only upon a showing that that court abused that discretion. *Commonwealth v. Walker*, 540 Pa. 80, 97, 656 A.2d 90, 99 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). Although evidence of prior bad acts or unrelated criminal behavior is generally inadmissible, that evidence may be admitted if introduced to show malice, motive or intent for the offense charged. *Id.* Further, evidence of prior bad acts is admissible when the distinct crime or bad act, "was part of a chain or sequence of events which formed the history of the case and was part of its natural development." *Id.* (quoting *Commonwealth v. Sam*, 535 Pa. 350, 359, 635 A.2d 603, 607 (1993), *cert. denied,* 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994)). In other words, evidence of the prior bad act may be admissible if "the crime currently being considered grew out of or was in any way caused by the prior set of facts or circumstances." *Commonwealth v. Schwartz*, 419 Pa.Super. 251, 263, 615 A.2d 350, 356 (1992), *appeal denied,* 535 Pa. 617, 629 A.2d 1379 (1993) (quoting *Com-*

*monwealth v. Mitchell*, 314 Pa.Super. 364, 367, 460 A.2d 1182, 1184 (1983)).

The Commonwealth relied on the radar detector to establish appellant's intent or state of mind. Radar detectors are used to detect speed measurement technology utilized by law enforcement personnel to ascertain the speed of vehicles. 49 C.F.R. § 390.5. According to the Commonwealth, appellant, by mounting a radar detector on his dash, demonstrated his prior intent to violate speed restrictions. Appellant's state of mind was relevant because the Commonwealth sought to establish that appellant's conduct was criminally negligent or reckless, a requirement for the crime of homicide by vehicle. *Francis*, 445 Pa.Super. at 357–58, 665 A.2d at 823.

Appellant also objects to the trial court's granting of the Commonwealth's motion in limine seeking to exclude reference to the subsequent alteration of road signs along Route 30. On the date of the collision, appellant asserts that only a single sign alerted motorists to the congested area ahead. After the collision, PennDOT erected additional signs to warn motorists of the approaching congestion in the area of the accident. According to appellant, PennDOT's subsequent addition of warning signs demonstrated that the road, in the absence of the added signs, was dangerous.[9]

We begin by stressing that the admissibility of evidence is a matter committed to the sound discretion of the trial court and an appellate court may not reverse an admissibility ruling absent an abuse of that discretion. *Commonwealth v. Simmons*, 541 Pa. 211, 235, 662 A.2d 621, 633 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996). Evidence is admissible if, and only if, it is relevant. *Commonwealth v. West*, 440 Pa.Super. 575, 578, 656 A.2d 519, 521 (1995), *appeal denied,* 542 Pa. 668, 668 A.2d 1131 (1995). Evidence is relevant if it tends to prove or disprove a material fact, to make a material fact more or less probable,

---

8. Because we have already conceded that the trial court improperly admitted the log book and related documents, we need not address that aspect of appellant's motion in limine.

9. Although appellant claims that the augmentation of signs was relevant to show that several accidents had occurred in the area of the instant collision, he fails to provide any evidentiary support for that allegation.

or to afford a basis or support for a reasonable inference or presumption regarding the existence of a material fact. *Id.*

Appellant seems to argue that the configuration of the roadway obstructed his view, thereby preventing him from seeing stopped traffic. As a result, additional signs were necessary to warn him of the impending danger. We cannot agree that evidence concerning the addition of signs is relevant to this case. The jury found appellant guilty of three counts of homicide by vehicle. He unintentionally caused the deaths of three other persons while violating sections of the Motor Vehicle Code prohibiting careless driving and requiring driving at a safe speed. Those violations caused the deaths.

 Under section 3361, driving at safe speed, a driver must maintain control of his or her vehicle:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having a regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361. That rule requires a motorist to drive at a speed no greater than that which would permit him to bring his vehicle to a stop within the distance that he can clearly see.[10] *Springer v. Luptowski,* 535 Pa. 332, 337, 635 A.2d 134, 136 (1993) (upholding the duty of motorists traversing curves and hill crests to travel at speeds slow enough to avoid colliding with unexpected obstructions on the roadway, including vehicles parked on the roadway). Appellant should have therefore taken any alleged de-

creased visibility into account and adjusted his speed.

Moreover, whether appellant was able to see far enough in advance of the congested area was not a material fact at issue in this case. We initially remind appellant that the brake lights on the victims' car were illuminated. As explained by Officer Jones, the driver would have been been able to see the point at which traffic was stopped in the right lane of Route 30 at the time of the accident from a distance of fifteen hundred (1500) feet. The officer's perception was buttressed by a videotape of the approach to the point of impact. If appellant had been traveling at a speed of fifty (50) miles per hour, then he would have required 368.7 feet to bring the tractor trailer to a stop. Had he been traveling at a speed of sixty (60) miles per hour, he would have required 478 feet. From the length of skid marks before the impact, 96.5 feet, Officer Jones was able to determine that appellant had begun braking when the front of his truck was approximately thirty-six (36) feet from the victims' car. In light of the foregoing, we cannot agree that the trial court abused its discretion by precluding the admission of evidence regarding the additional warning signs.

 In addition, appellant contends that the trial court erred by qualifying Officer Jeffrey Jones as an expert in accident reconstruction. Specifically, appellant objects to the qualification because, at the time of the underlying collision, Officer Jones had investigated only one other accident involving a tractor trailer and had been qualified as an expert in the field of accident reconstruction on only one other occasion. Further, appellant relies on Officer Jones' acknowledged mistake in initially calculating the truck's minimum speed.

 The qualification of a witness as an expert and the admission of expert testimony lie within the sound discretion of the trial court. *Commonwealth v. Miller,* 426 Pa.Super. 410, 424, 627 A.2d 741, 748–49 (1993), *appeal denied,* 537 Pa. 648, 644 A.2d 734 (1994). A witness who has any reasonable basis of special knowledge on a subject

---

10. Appellant does not claim to fall within any of the recognized exceptions to this rule.

may testify as an expert. *Id.* at 425, 627 A.2d at 749. An expert's pretension to specialized knowledge may be based upon practical, occupational, or other experiential training; the expert need not have gained expertise through academic training. *Commonwealth v. Bowser, supra,* 425 Pa.Super. 24, 40, 624 A.2d 125, 134 (1993), *appeal denied,* 537 Pa. 638, 644 A.2d 161 (1994), *cert. denied,* 513 U.S. 867, 115 S.Ct. 186, 130 L.Ed.2d 120 (1994) (quoting *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 332, 534 A.2d 106, 109 (1987), *overruled on other grounds,* 403 Pa.Super. 280, 588 A.2d 951 (1991) (*en banc* )). A court bases its determination solely on whether the witness' opinions will aid the trier of fact in finding the truth of the issues involved. *Commonwealth v. Berrena,* 421 Pa.Super. 247, 251, 617 A.2d 1278, 1280 (1992). We may not reverse a lower court's determination absent a clear abuse of discretion. *Miller,* 426 Pa.Super. at 424, 627 A.2d at 748–49.

During voir dire, Officer Jones revealed that, in 1991, he had received a certificate from the Traffic Institute for Police Services and the Pennsylvania Department of Education for successfully completing an eighty (80) hour course regarding on-scene accident investigation and homicides by vehicle. Additionally, in July, 1992, Officer Jones completed seventy (70) hours of training in advanced traffic accident investigation. That course, like the first, was offered by the Pennsylvania Department of Education and the Traffic Institute for Police Services. In August, 1995, Officer Jones completed an eighty (80) hour third level accident reconstruction course. Moreover, in September, 1995, he completed an eighty (80) hour course on the investigation of commercial vehicle accidents. N.T. 5/10/96 at 349–51.

Since completing the 1991 and 1992 courses, the officer has participated in between twenty (20) and twenty-six (26) accident investigations involving reconstruction. Further, he is a member of the National Association for Professional Accident Reconstruction Specialists. N.T. 5/10/96 at 340–346. Based on the foregoing, we cannot agree that the trial court abused its discretion by deeming Officer Jones qualified to

testify as an expert in the field of accident reconstruction. *See Bowser, supra,* 425 Pa.Super. at 41–41, 624 A.2d at 134 (the trial court properly could have concluded that the trooper's training and experience provided her with sufficient knowledge to testify as an expert in the field of accident reconstruction: the trooper received basic training in accident investigation after joining the Pennsylvania State Police; the trooper received advanced training in that subject and was assigned to various areas of Western Pennsylvania as a member of the traffic unit, which enforces the motor vehicle laws and investigates accidents; she completed an accident reconstruction course offered by the Pennsylvania Department of Education as well as a course dealing with special problems in accident reconstruction; she performed six full reconstructions, and the trooper was a member of the National Association of Professional Accident Reconstruction Specialists).

■ Nor do we agree that the officer's initial miscalculation disqualified him from providing expert testimony. As appellant points out, Officer Jones, before completing the 1995 courses, calculated the minimum speed of the tractor trailer to be 63.18 miles per hour. N.T. 5/10/96 at 347. At trial, however, he admitted that he had used an incorrect braking efficiency to calculate that minimum speed. He realized his error after completing the 1995 courses and recalculated the minimum speed to be 52.86 miles per hour. N.T. 5/10/96 at 350–51. This criticism does not implicate appellant's qualification to testify as an expert. Rather, it goes to the weight to be accorded his testimony, a matter to be determined by the jury. *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974).

■ Appellant also claims that the trial court erred by admitting into evidence photographs of the crime scene, which were taken just after the collision, because the prejudicial nature of those photographs outweighed their probative value. The admissibility of photographs in homicide cases likewise lies within the discretion of the trial judge, and only an abuse of discretion will constitute reversible error. *Commonwealth v. Sim-*

mons, *supra*, 541 Pa. at 243, 662 A.2d at 637. The determinative inquiry is whether the evidentiary value of the photographs outweighs the possibility of inflaming the minds and passions of the jurors. *Commonwealth v. Jacobs*, 536 Pa. 402, 406–07, 639 A.2d 786, 788 (1994).

■ Although an appellant bears responsibility for supplying this court with a complete record for purposes of review, appellant in this case has failed to certify to this court the contested photographs. *See* Pa. R.A.P., Rule 1921, 42 Pa.C.S.A. *See also Commonwealth v. Feflie*, 398 Pa.Super. 622, 581 A.2d 636 (1990), *appeal denied*, 528 Pa. 621, 597 A.2d 1151 (1991) (it is appellant's responsibility to offer a complete record for appellate review). When a claim is dependent on materials not provided in the certified record, that claim is considered waived. *Commonwealth v. Lassen*, 442 Pa.Super. 298, 315–16, 659 A.2d 999, 1008 (1995) (appellant's assertion that photographs of the victim's injuries were inadmissible based on their inflammatory and prejudicial nature was waived because he failed to include those photographs in the record). As such, we shall not consider this issue further.

Judgment of sentence affirmed.

POPOVICH, J. files a concurring statement.

JOHNSON, J. files a dissenting opinion.

POPOVICH, Judge, concurring.

Given the extensive regulation of the commercial trucking industry by both the federal government and the Commonwealth and the circumstances surrounding this most tragic accident, I am convinced that appellant's right to privacy in his vehicle was substantially diminished, and the police did not violate his right to privacy through warrantless searches and seizures of his radar detector, log book and bank records.

However, I point out that the officers herein could have easily avoided the issue before us by obtaining a search warrant. Officers had secured appellant's vehicle, and there was no possibility that appellant could obtain the evidence and destroy or alter it. This fact is made most evident by the seizure of the radar detector from the truck some *twenty-five days after the accident*. Simply, I am convinced there were no exigencies which would permit a warrantless search under *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995).

Nevertheless, as previously stated, I believe the warrantless searches were permissible due to the extensive regulation of the commercial trucking industry which, *inter alia*, permits warrantless inspections of a vehicle when police have probable cause to believe that a driver is unsafe or not in compliance with the law or trucking regulations. See, 75 Pa.C.S.A. § 4704.

Further, I agree with the majority's determination that admission of the evidence in question, even if improper, was harmless error.

JOHNSON, Judge, dissenting:

The Majority holds that the trial court's error of denying the motion to suppress the log book, brown bag and bank deposit bag was harmless. I, however, cannot conclude that the admission of this evidence was harmless beyond a reasonable doubt. The Majority also holds that the radar detector was properly admitted at trial. I would hold that it was irrelevant and should have been excluded. I therefore dissent.

In its landmark decision of *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the United States Supreme Court established that different Fourth Amendment standards apply to searches conducted for regulatory or administrative purposes than apply to searches conducted as part of criminal investigations. If a search is administrative or regulatory in purpose, the government is not required to show that probable cause exists to believe that evidence of a crime will be found in the place to be searched; rather, the search is valid as long as it is conducted pursuant to a statutory or regulatory inspection scheme. *New York v. Burger*, 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987); *Michigan v. Tyler*, 436 U.S. 499, 506 n. 5, 98 S.Ct. 1942, 1948 n. 5, 56 L.Ed.2d 486 (1978).

If a search is conducted as part of a criminal investigation, however, the police are generally required to show "some quantum of individualized suspicion" that evidence of a crime will be found in the place to be searched. *United States v. Martinez–Fuerte*, 428 U.S. 543, 560, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976); *accord Delaware v. Prouse*, 440 U.S. 648, 654–55, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979). Thus, whether the purpose of a search is administrative or criminal determines the level of suspicion needed to justify that search. *See Michigan v. Clifford*, 464 U.S. 287, 294, 104 S.Ct. 641, 647, 78 L.Ed.2d 477 (1984) (plurality opinion); *id.* at 300, 104 S.Ct. at 650 (Stevens, J., concurring); *Donovan v. Dewey*, 452 U.S. 594, 598 n. 6, 101 S.Ct. 2534, 2538 n. 6, 69 L.Ed.2d 262 (1981) (administrative search doctrine inapplicable where commercial property searched for evidence of crime); *Tyler*, 436 U.S. at 508, 98 S.Ct. at 1949 ("[i]f the authorities are seeking evidence to be used in a criminal prosecution, the usual standard [of probable cause] will apply.") (internal quotations omitted).

The Majority concludes that this search was administrative and holds that the search was legal under the exception to the warrant requirement that allows warrantless searches of "pervasively regulated" businesses. The Majority further holds that the seizure of the log book, brown bag and bank deposit bag was invalid, but that the admission of this evidence constituted harmless error. I agree that this evidence was improperly seized and should have been suppressed. I would also hold, however, that the search itself was unlawful and that the admission of this evidence was not harmless error.

After reviewing the record, I conclude that the seizure of the disputed items occurred during a search that was part of a criminal investigation, thus the search should have been reviewed under the more demanding Fourth Amendment standards traditionally applied in the criminal context. The record indicates that the police treated the accident investigation, from the outset, as a criminal investigation. This position is shown by the following testimony of Officer Jeffrey Jones of the Manheim Township Police Department:

Q. [W]as there anything that caught your attention or led you to believe that there may be a violation of the Vehicle Code or the Crimes Code?

A. Yes. While I was at the scene, I observed lengthy skid marks coming from the tractor trailer. I also observed the damage to each vehicle and based on my observations I felt that I was dealing with a speed issue in this investigation.

N.T., May 6, 1996, at 66. Officer Jones also stated that "I knew that this was going to be an investigation, criminal investigation that I should be thorough in." *Id.* at 91. The search of the truck, therefore, was part of a criminal investigation. I thus conclude that the Majority erred by applying administrative search standards to determine the legality of the search and seizure in this case; instead, general Fourth Amendment standards should have been applied.

Applying those standards, I conclude that this search was invalid. For a warrantless search of an automobile to be valid under the Fourth Amendment, the police must have probable cause to believe that the vehicle contains evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). To establish probable cause, the government must show some suspicion, based upon articulable facts, that evidence of a crime is likely to be found in the vehicle to be searched. *See Commonwealth v. Council*, 491 Pa. 434, 443, 421 A.2d 623, 627 (1980).

In this case, the police had no suspicion that the truck contained evidence of a criminal violation. Rather, Officer Jones testified that he suspected, based on the evidence at the accident scene, that Petroll's truck was speeding and that this speeding caused the accident. It does not follow from Officer Jones's suspicion that the police had any reason to believe that the inside of Petroll's truck held evidence of a crime. Nor does Petroll's speeding give rise to the suspicion that he had falsified his log book. I have

found nothing in the record that establishes probable cause to believe that the truck contained evidence of a crime. Accordingly, I conclude that the search was invalid and that the evidence should have been suppressed.

The Majority asserts that my conclusion that general Fourth Amendment standards govern this search is wrong. I believe, however, that the record shows that, from the outset, the police treated this case as a criminal investigation. N.T., May 6, 1996, at 66, 91. Further, the administrative purpose that the Commonwealth now claims justified this search and seizure—to determine, for safety purposes, Petroll's compliance with the regulations requiring drivers to rest a certain number of hours each day—is inapplicable here because Petroll's truck was going to be impounded and Petroll was not going to drive anywhere else that night. N.T., May 7, 1996, at 133. Safety reasons, therefore, could not have justified the search for and seizure of these documents.

Further, even if I accepted the Majority's conclusion that administrative search standards governed the propriety of this search, I would still conclude that both the search and seizure were unconstitutional because both lacked regulatory or statutory authorization. *See Colonnade Catering Corp. v. United States,* 397 U.S. 72, 77, 90 S.Ct. 774, 777, 25 L.Ed.2d 60 (1970). Under the administrative search doctrine, warrantless inspections of pervasively regulated businesses may be constitutional if the inspections are authorized by statute or regulation. *Burger,* 482 U.S. at 703, 107 S.Ct. at 2644. The Majority asserts that the "statutes and regulations at issue in this case inform the driver that inspections may be conducted." Maj. Op. at 829. I have reviewed the state and federal regulations that the Majority cites; while I agree that they require truck drivers to compile and maintain certain documents, none of the regulations gives police officers the right to search for those documents. Nor does the Majority state which regulations create the right to search for documents.

The Majority does, however, cite statutory authority for the search of the truck cab. Specifically, the Majority claims that sections 4704(a)(3)(i) and 4704(d) of the Vehicle Code

authorize the warrantless search of the truck. Section 4704(a)(3)(i) provides that "[a]ny State Police officer or qualified Commonwealth employee having probable cause to believe that a vehicle, driver, documents, equipment or load are ... not in compliance with the law or regulations may *inspect* the vehicle, driver, documents, equipment or load." 75 Pa.C.S. § 4704(a)(3)(i) (emphasis added). Section 4704(d) provides that "[a]ny police officer or qualified Commonwealth employee shall be authorized ... to *inspect* and copy documents and otherwise to ensure compliance with the law and Commonwealth regulations...." *Id.* § 4704(d) (emphasis added).

These subsections clearly give police the right to "inspect" certain documents. The Majority, however, would construe the right to "inspect" as a right to enter motor vehicles without a warrant in order to search for documents. I have found no Pennsylvania cases construing the term "inspect," as used in this statute, in such a broad fashion. Nor is the plain meaning of that term susceptible of such a construction. Webster's Dictionary provides two definitions for the word inspect: (1) to view closely and critically; and (2) to view and examine officially. Webster's Third International New Dictionary 1170 (1976). Under neither definition does the term "inspect" mean "to enter and search."

The Majority also holds that the failure to suppress the improperly seized evidence was merely harmless error. I disagree.

An error is harmless if the reviewing court is convinced, beyond a reasonable doubt, that the error could not have contributed to the guilty verdict. *Commonwealth v. Rasheed,* 536 Pa. 567, 573, 640 A.2d 896, 898 (1994). Unless the court is convinced beyond a reasonable doubt that the jury would have returned a guilty verdict in the absence of the tainted evidence, then the court must reverse the judgment of sentence and grant a new trial. *Id.*

At trial, the Commonwealth presented the following untainted evidence of Petroll's guilt: (1) the testimony of medical technician Carla Cwynar, who testified that Petroll stated that he had fallen asleep before the acci-

dent; (2) the testimony of eyewitness Robert Reber, who testified that Petroll was leaning down in his seat with his head down prior to the accident; and (3) the testimony of a police officer, testifying as an accident reconstructionist, regarding the speed that Petroll was driving before the accident.

After reviewing the record, I am not convinced beyond a reasonable doubt that the admission of the improperly seized evidence was harmless. First, after Cwynar testified on direct examination that Petroll said that he had fallen asleep before the accident, Petroll's counsel, on cross-examination, attempted to impeach her credibility. Specifically, he questioned her about her failure to include Petroll's alleged statement in her accident report or to mention this statement to others in the period after the accident. N.T., May 10, 1996, at 261–77. This impeachment tactic could have been sufficient to cause the jury to discredit Cwynar's testimony.

Second, Reber testified on direct examination that he saw Petroll slumped down in his seat, with his head to the right, prior to the accident. The Majority concludes that the only inference that one can draw from this testimony is that Petroll was asleep. On cross-examination, however, Reber testified that in order to shift gears one might have to lean over to the right to reach the gear shift. N.T., May 9, 1996, at 102. Thus, the jury might have inferred from Reber's testimony that Petroll was shifting gears rather than sleeping.

Third, Officer Jeffrey Jones testified as an accident reconstructionist that, based on the length of the skid marks generated by Petroll's truck, that Petroll had been speeding prior to the accident and that, had Petroll been paying attention to the road, he could easily have stopped his truck without hitting any other vehicles. On cross-examination, however, Petroll's counsel impeached Officer Jones's credibility by questioning him about a mathematical mistake that he had made, in an earlier report, that caused him to miscalculate Petroll's speed by over twenty miles per hour. N.T., May 13, 1996, at 437–46. Thus, the jury might have discredited Officer Jones's testimony based on this impeachment evidence.

Because the untainted evidence could have been discredited by the jury, I cannot conclude that the admission of the improper evidence did not affect the verdict; I thus cannot conclude that the improperly admitted evidence was harmless beyond a reasonable doubt. Accordingly, I would reverse and remand for a new trial without the improperly seized evidence.

I agree with the Majority that the radar detector was properly seized under the plain view doctrine. I disagree, however, with the Majority's conclusion that the radar detector was properly admitted at trial and would instead hold that the radar detector is irrelevant to the issues presented to the jury in this case.

Evidence is relevant if it tends to make a fact at issue more or less likely. *Commonwealth v. Vallejo*, 532 Pa. 558, 561, 616 A.2d 974, 976 (1992). Irrelevant evidence is inadmissible. *Commonwealth v. Jackson*, 336 Pa.Super. 609, 619, 486 A.2d 431, 437 (1984). The Majority argues that the radar detector was relevant to establish "prior intent to violate speed restrictions." Maj. Op. at 833.

In order to prove that a defendant committed vehicular homicide, the Commonwealth must establish that: (1) the defendant violated the Vehicle Code; (2) the defendant knew or should have known that his conduct violated the Vehicle Code; and (3) the Vehicle Code violation caused a death. *Commonwealth v. Thomas*, 440 Pa.Super. 564, 572, 656 A.2d 514, 518 (1995); *accord Commonwealth v. Francis*, 445 Pa.Super. 353, 357–58, 665 A.2d 821, 823 (1995) (Commonwealth must establish that defendant's conduct was criminally negligent or reckless). "Prior intent" to violate speeding laws simply has no bearing on this analysis. Nor does the fact that the radar detector was present in the truck give rise to the inference that Petroll was speeding at the time of the accident. Furthermore, even if proof that Petroll was using a radar detector had some relevance to this case, the Commonwealth has offered no evidence indicating that Petroll actually used the radar detector before the accident. I therefore would hold that the radar detector

should have been excluded because it is irrelevant to the issues presented to the jury.

Based upon the foregoing, I would hold that the search of the truck and seizure of the log book, brown bag and bank deposit bag in this case was unreasonable and that the denial of the suppression motion was not harmless error. I would thus reverse the judgment of sentence and remand for a new trial without the improperly seized evidence. I would also hold that the trial court erred by denying the motion in limine to exclude the radar detector, and would reverse and remand on that basis as well. I therefore dissent.