WILSON TRANSPORTATION COMPANY, RESPONDENT, v.
OWENS-ILLINOIS GLASS COMPANY, APPELLANT.

Argued October 15, 1940—Decided January 28, 1941.

For the appellant, *Duane E. Minard* (*Albert E. McAllister, David L. Horuvitz, Ralph E. Cooper* and *Charles V. Webb, Jr.*, on the brief).

For the respondent, *LeRoy W. Loder*.

The opinion of the court was delivered by

PARKER, J. The plaintiff has verdict and judgment for damages because of the cancellation by defendant of a written contract whereby plaintiff agreed to furnish trucking service for defendant's products at a stipulated compensation. The errors alleged at the argument and in the brief are, the refusal of the trial court to nonsuit or to direct a verdict for defendant: two rulings on evidence, and the refusals to charge one request and part of another.

The claim that no case for the jury had been made is rested on the proposition that the trucking contract was unilateral, binding on plaintiff for a term of three years, but revocable at the pleasure of defendant. Our examination of the contract leads to the opposite conclusion. It is undeniable that the obligations of plaintiff are detailed in the contract by a skilled draftsman and with meticulous particularity, and that those of defendant are largely left to inference: but mutuality is readily perceptible. The instrument is in three parts: an introductory agreement: a schedule of transportation rates: and a rather lengthy specification of "terms and conditions."

The three parts of course are to be read together, and the first and third are controlling on the questions presented. The first "witnesseth, in consideration of the *mutual* promises and covenants." In paragraph 3 it is expressly laid down that the "agreement shall remain in force and effect for three years" after date. Then in the "terms and conditions," which are expressly made a part of the contract, we read in paragraph 7 that "each party hereto shall be *relieved* of its obligations under this contract during the period or periods of time when strikes or other contingencies beyond the control of the *defaulting party* shall render impossible the furnishing, *use* or operation of the equipment." And again: "In the *event* that any plant of Owens-Illinois served by Trucker shall for any period cease to produce glass containers, then Owens-Illinois shall *be relieved of its obligations* as fixed by this contract for that plant during the period of non-production:" and still further, "9. *If Trucker should* fail to furnish sufficient equipment or should fail to carry out the terms of this agreement, Owens-Illinois *shall have the right to cancel* this agreement or to *waive* the default and procure sufficient equipment from other sources." (Italics ours.)

The primary obligation of the plaintiff was to furnish to defendant at its plant in Bridgeton adequate trucking equipment * * * "to receive and to load the entire shipments offered" * * * to the points mentioned in the schedule. And this obligation, according to plaintiff's evidence, it performed even to the extent of buying some trucks and hiring

others in an emergency, to take care of all the product requiring transporation: but about four months after the execution of the contract it became evident that defendant was using another trucking concern in preference to plaintiff; plaintiff's president went to headquarters in Ohio to see about it, and was told that he was "through" and might as well sell his trucks to the other concern, which he did.

The contract was prepared at the direction of the defendant, and was sent by defendant to plaintiff for execution. In view of this fact, and of the extracts from the language of the instrument above quoted, we have no hesitation in holding that the obligations were mutual; of the plaintiff, to truck all of defendant's Bridgeton product and furnish sufficient equipment and personnel for so doing: and of defendant, to entrust all that product to plaintiff so long as plaintiff performed its part of the contract. Otherwise the quoted provisions are meaningless.

The motions to nonsuit and to direct were therefore properly denied. It is argued, in support of them, that there was no competent evidence to prove legal damages, and particularly that plaintiff could not claim for loss on sale of its trucks upon the cancellation, because there was no proof that plaintiff had title to them. For purposes of refusal of a nonsuit or direction, it is sufficient to say that lack of proof of substantial damage is no ground for calling the plaintiff. *Dickerson, Inc.,* v. *Levine,* 98 *N. J. L.* 313.

Next, as to the rulings on evidence. A part of the claim of damages was that plaintiff company because of the breach of contract had been obliged to dispose of its trucks and other vehicles at a loss. Samuel Wilson, the president, testified that at the time of making the contract the company "had" seventeen tractors, sixteen trailers, and one Ford truck. All this went in without objection, but at this point defense counsel interrupted, saying: "I didn't interpose an objection, because I didn't think they were going to prove the type of trailer that has been used. This is not the best evidence. The best evidence is the production of bills of sale and instruments. On that ground we ask that the previous testimony be stricken from the record." The motion was

denied and exception noted. We have difficulty in understanding just what the "type of trailer" had to do with the motion, but taking it as an objection to parol testimony of ownership—and it seems now to be so argued—we think the motion was properly denied. If the title to the trucks had been directly involved, as in a case of replevin for example, documentary evidence would have been required. *Security Credit Corp.* v. *Whiting Motor Co.,* 98 *N. J. L.* 45; *Merchants' Securities Corp.* v. *Lane,* 106 *Id.* 169, 576. But in the present case the plaintiff's *quantum* of interest in the trucks was in no way material to the issue. By the contract plaintiff was to perform certain services and for that purpose had to have certain trucking equipment. The question whether that equipment was purchased for cash or on conditional sale, or hired from the owner, with or without operators, was ignored in the contract. What was in issue, on proof of default by defendant, was the *quantum* of damages, and as part of that, what money loss plaintiff sustained by having to dispose, not necessarily of absolute ownership in the trucks, but of such interest as it had acquired and paid for or become obligated for, to the end that it might perform the contract.

The same considerations dispose of the refusal to charge the twelfth request, which reads as follows: "(12) As there is no evidence that either the legal or equitable title to the trucks sold to the Cross Transportation Co. belonged to the plaintiff corporation, no damages can be allowed for the loss which it claims resulted from the sale of such equipment at less than its value."

Finally, request No. 15, taking up over half a page in the printed book, was also refused, and appellant asserts error, not in refusing to charge it as requested, but in refusing to charge the last eight lines of said request No. 15. It is sufficient to say that the request was submitted as a whole, and on thoroughly settled principles no duty is imposed on the court of considering it in any other aspect.

The foregoing seems to cover all the matters assigned for error and discussed in the argument and brief. The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.