J-S16008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                                            : PENNSYLVANIA
                                                                            :
                                    v.                                      :
                                                                            :
                                                                            :
                                                                            :
AR RAHEEM DURANT-EL                          :
                                                                            :
                        Appellant                         :   No. 1633 MDA 2018

Appeal from the Judgment of Sentence Entered August 15, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0000407-2018

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                         **FILED JULY 09, 2019**

Ar Raheem Durant-El appeals from the judgment of sentence imposed August 15, 2018, in the Berks County Court of Common Pleas, made final by the denial of post-sentence motions on September 10, 2018.  On August 15, 2018, a jury convicted Durant-El of aggravated harassment by a prisoner and harassment (engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose).[1]  That same day, the trial court sentenced Durant-El to a term of 15 months to three years' incarceration.  On appeal,

---

[1]  **See** 18 Pa.C.S. §§ 2703.1 and 2709(a)(3).

Durant-El raises sufficiency and weight of the evidence claims.[2] For the reasons below, we affirm the judgment of sentence.

The trial court set forth the facts as follows:

> Here, Shantay McPherson testified that she is employed as a monitor at the Wernersville Community Corrections Center [("WCCC")], which is located in Berks County, Pennsylvania. Ms. McPherson stated that on October 24, 2017, at approximately 6:20 p.m., [Durant-El] passed behind her while re-entering the facility. Ms. McPherson testified that when she told [Durant-El] not to do that, he became angry and upset. According to Ms. McPherson, [Durant-El] then used profanity and told her that nobody wanted her. After [Durant-El] walked through a metal detector, Ms. McPherson asked him to submit to a breathalyzer test. Ms. McPherson testified that instead of lightly blowing air into the breathalyzer, [Durant-El] put his head back and then spat in her face. The Commonwealth admitted video surveillance of the incident into evidence as Commonwealth's Exhibit 1 and played the video for the jury.
>
> Rachel McDonnell, who is also employed by the Department of Corrections as a monitor at the Wernersville facility, testified that upon re-entry, [Durant-El] became belligerent and spat in Ms. McPherson's face when she attempted to administer a breathalyzer test. In addition, Sonya Wentzel and Courtney Phillips testified that they also observed [Durant-El] spit in Ms. McPherson's face. Ms. Wentzel described [Durant-El]'s demeanor at the time as "argumentative" while Ms. Phillips described him as "not happy."

---

[2] We note Durant-El raised a discretionary aspect of sentencing issue in the "statement of questions involved" ("SOQI") section of his brief as well as a Pa.R.A.P. 2119(f) statement. However, in a footnote at the end of the SOQI section, counsel indicated the discretionary aspect of sentencing issue would not be addressed in the brief as "counsel [wa]s unable to find a meritorious argument to support this assertion[.]" Durant-El's Brief at 12 n.1. As such, we are compelled to find Durant-El has effectively abandoned the claim and we need not address it further. *See Commonwealth v. Puksar*, 951 A.2d 267, 293 (Pa. 2008) (determining claim was waived where defendant failed to make or develop his argument).

Trial Court Opinion, 12/3/2018, at 3-4 (record citations omitted).

Durant-El was then charged with one count of aggravated harassment by a prisoner and harassment. As noted above, on August 15, 2018, a jury convicted Durant-El of aggravated harassment. The court found him guilty of harassment. That same day, the trial court sentenced him to a term of 15 months to three years' incarceration.[3] On August 27, 2018, Durant-El filed post-sentence motions, raising sufficiency, weight, and discretionary aspects of sentencing claims.[4] The court denied the post-sentence motions on September 10, 2018. This appeal followed.[5]

In his first argument, with respect to his aggravated harassment conviction, Durant-El claims there was insufficient evidence to demonstrate he "intentionally or knowingly spat on a security guard while taking a breathalyzer." Durant-El's Brief at 19. Specifically, he states:

> [T]he circumstances and evidence point towards reckless behavior, rather than intentional or knowing behavior. The surrounding circumstances show that [Durant-El] was agitated, but he cooperated with the re-entry procedure. Additionally, the evidence only affirms that saliva got on the Victim while [Durant-

_____

[3] The harassment offense merged with the aggravated harassment crime for sentencing purposes.

[4] The post-sentence motion was timely filed as the 10th day fell on a weekend. **See** 18 Pa.C.S. § 1908.

[5] On October 3, 2018, the trial court ordered Durant-El to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Durant-El filed a concise statement on October 22, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 3, 2018.

El] blew into a breathalyzer, yet fails to establish [Durant-El]'s true intent.

Unlike in [**Commonwealth v.**] **Rodriguez**[,673 A.2d 962 (Pa. Super. 1996),] where defendant showed his intent through the act of continuously beating a vulnerable victim, here there is no clear-cut indication that [Durant-El] would audaciously spit on [] McPherson. Nevertheless, the prosecution attempted to show that [Durant-El] was hostile towards that Victim, especially after [] she ordered him to not go around the metal detector. Such hostility then prompted him to intentionally spit on her. But being annoyed cannot not [sic] then infer intentional spitting.

Rather, the video surveillance and the surrounding circumstances were unclear about [Durant-El]'s intent. First, witness testimony recalled that [Durant-El] was agitated at the time, but despite his agitation several of his actions diminished the notion that he intentional[ly] spit at the Victim. [Durant-El] complied with the re-entry procedure and followed the security guards' orders. He even stood by and took the breathalyzer a second time, despite his disagreement with taking the test. Additionally, the prosecution failed to show whether [Durant-El] actually looked at the Victim while blowing, or if he looked at the breathalyzer. This fact would certainly infer his intent while blowing out air.

Next, the other guards did not react when [Durant-El] supposedly spit on the Victim; rather, [] McPherson wiped her face and continued to administer a breathalyzer. Unlike in [**Commonwealth v.**] **Hecker**[,153 A.3d 1005 (Pa. Super 2016),] where defendant's repeated spitting for twelve minutes undoubtedly conveyed his intent, here the alleged spitting was not so egregious as to compel the other guards to react, admonish, or immediately detain [Durant-El]. Instead, the act appeared unintended, and the guards interpreted it so. Therefore, the testimonial evidence failed to evince that [Durant-El] intentionally or knowingly spit on the Victim.

Finally, the testimony affirms that [Durant-El] was agitated when he re-entered WCCC, but this fact alone fails to prove intent. Instead, video surveillance and [Durant-El]'s testimony infer that he was singled out to go through the metal detector with his bags, even though none of the other residents were. He also was singled out for a breathalyzer, as seen in the video surveillance.

- 4 -

These things deviated from the regular re-entry procedure that [Durant-El] knew, and yet he was reprimanded for doing what he knew.

Durant-El's Brief at 22-25 (footnote and citations omitted).

Our standard of review regarding a sufficiency claim is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial [ ] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Stiles*, 143 A.3d 968, 981 (Pa. Super. 2016) (citation omitted).

The crime of aggravated harassment by prisoner is defined as follows:

A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed ... intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S. § 2703.1.[6] "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) (citations and quotation marks omitted). Moreover, we are guided by 18 Pa.C.S. § 302, in relevant part:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302.

_____

[6] "[I]t is unnecessary for the Commonwealth to conduct a chemical analysis of the fluid or material to determine whether it is one of the fluids/materials listed in Section 2703.1. Rather, the Commonwealth may rely on circumstantial evidence to prove the identity of the fluid or material." *Commonwealth v. Boyd*, 763 A.2d 421, 424 (Pa. Super. 2000).

Initially, we note the surveillance video, which captured the incident, is not included in the certified record. It is an appellant's responsibility to ensure that the certified record contains all the items necessary to review his claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008). "When a claim is dependent on materials not provided in the certified record, that claim is considered waived." *Commonwealth v. Petroll*, 696 A.2d 817, 836 (Pa. Super. 1997) (citation omitted), *affirmed*, 738 A.2d 993 (Pa. 1999). Nevertheless, as discussed below, the testimony presented by the Commonwealth at trial, by itself, was sufficient to establish the crime of aggravated harassment by prisoner beyond a reasonable doubt, and therefore, we will not find that Durant-El has waived this claim.

A review of the trial testimony reveals the following: On the day in question, McPherson, employed as a community corrections center monitor at WCCC,[7] was processing re-entrants when Durant-El returned to the facility. N.T., 8/15/2018, at 41-43. McPherson indicated that part of her normal job duties was to conduct pat-down searches, searches of property, and Breathalyzer tests[8] with respect to re-entrants. *Id.* at 44. She described the re-entry process as follows:

---

[7] WCCC is similar to a halfway house, where people to reside after he or she leaves prison and has nowhere to stay. N.T., 8/15/2018, at 89.

[8] McPherson described the breathalyzer device as follows: "The Breathalyzer is -- it's shaped sort of like a rectangle, and across the top there's a little piece

The procedure coming into the building, [the re-entrants] come to the front door. It's a secured building, so we have to let them in. They will sign in with the monitor who is in Control. They will put their property on the search table. They must empty out all their pockets, put all bags up, remove jackets. They have to clear the metal detector. When they clear the metal detector, they are pat searched, given a Breathalyzer.

*Id.* at 45.

McPherson testified that Durant-El did not go through the metal detector but tried to pass behind her. *Id.* She instructed Durant-El not to pass behind her and she said he became "angry and upset." *Id.* Additionally, he told her that "nobody wanted to be that close to [her]." *Id.* at 46. Durant-El then went through the metal detector. After going through the detector without incident, McPherson described the following: "When I asked [Durant-El] for the Breathalyzer, I held it out at arm's length. And when he went to take the Breathalyzer, he put his head back and, like, instead of lightly blowing air like he should have, he spit on my face." *Id.* at 46-47.[9] McPherson indicated that to her knowledge, Durant-El would have previously submitted to a Breathalyzer test since he had signed out before this day. *Id.* at 47.[10]

_____

that sticks out, and you can just blow air gently across the top, and it reads the air, and you get an alcohol or no alcohol reading." *Id.* at 47.

[9] At the same time as Durant-El was taking the Breathalyzer test, another employee was conducting a pat-down search of his person. *Id.* at 54.

[10] McPherson could not remember if she specifically gave Durant-El a Breathalyzer prior to this incident. *Id.* at 56.

McPherson asked Durant-El to retake the Breathalyzer test and he complied without any issue. *Id.* at 48. She went into the Control Room and washed her face. *Id.* McPherson stated Durant-El was yelling and aggressive, and the other monitors were trying to calm him down. *Id.* at 49.

Rachel McDonnell, another employee at WCCC, testified to the following regarding the incident: "[Durant-El] was … argumentative with staff. We told him, you know, calm down, tried to de-escalate the situation. And [McPherson] tried to get a Breathalyzer off him, and he spit in her face." *Id.* at 63.

Sonya Wentzel, an additional employee at WCCC, stated she called Durant-El to do a pat-down search while McPherson requested the Breathalyzer test. *Id.* at 71. She testified to her following observation: "[Durant-El] reared back, like to take a deep breath, and then blew into the [Breathalyzer], but I was behind him, so I thought he was blowing into the [Breathalyzer], and then I saw [McPherson], like, move back and wipe her face and say, That was disgusting." *Id.* at 72. Wentzel could not remember specifically what Durant-El was saying but she knew "he was not happy at the moment." *Id.* at 73.[11]

---

[11] Wentzel stated that every re-entrant that comes into the center should be subjected to a Breathalyzer test but, on cross-examination, she indicated that on the video, it showed another re-entrant who was not subjected to the test. *Id.* at 75-76.

Courtney Phillips, a third employee at WCCC, described Durant-El's demeanor with respect to the incident as follows:

> Agitated. I'm not particularly sure what [Durant-El]'s issue was, but during his approach to the metal detector, … he just got too close -- he wasn't a safe distance for him to be from the other monitor. So when [McPherson] had asked him to approach the metal detector a different way, he became agitated further, and it seemed to escalate from there. And then the same monitor had asked for a breath sample, and it seemed everything we asked for was agitating him further.
>
> …
>
> [McPherson] held it, I would say, directly -- it was up in line with his face, and he just moved his head back a little bit and just forcefully blew into it, which is not the necessary procedure.
>
> …
>
> It only takes a small amount of breath, only (indicating). You can obtain the sample by simply holding the Breathalyzer over, like a bottle and just squeezing just a bottle to produce an appropriate level.
>
> …
>
> Prior to asking for the Breathalyzer, the other monitor had asked him to go around because he was too close to her, and he said, Nobody wants to be that f'in close to you anyway.

*Id.* at 83-84.

Lieutenant Jason Matthew Sommers testified that he spoke with Durant-El after the incident and Durant-El said something to the effect that it was "an accident … he didn't mean to, it was just a spray…. It was never meant to be that way. He would never do something like that." *Id.* at 94. Trooper Ethan Brownback also spoke with Durant-El following the incident and indicated

Durant-El was "rather agitated," "[h]e was venting for a while," and his "big thing he was trying to get across to [the trooper] was that he blew too hard and that saliva came out of his mouth." *Id.* at 100-101.[12]

Lastly, Durant-El took the stand in his defense. He explained that on the evening in question, he was coming back from getting dinner and was waiting in line to re-enter the facility. *Id.* at 108-109. When asked about the Breathalyzer test with respect to other individuals staying at the facility, he stated, "Nobody done a Breathalyzer test, which was supposed to be standard." *Id.* at 110. He then testified:

> Shantay McPherson, who's the only one that week who has given me a Breathalyzer test, never puts the Breathalyzer test in my mouth. I never took a Breathalyzer test at the Wernersville CCC Center. On 10/23, Ms. McPherson gave me a Breathalyzer test, on my son's birthday, and was willing to help me fill out my menu for work that week, and the next day she's standing in my pedestrian walkway when no monitor does that. So we are not allowed to walk through the metal detector with our bags because if you have change or anything in your pocket, or a belt, or metal, it would set the metal detector off.
>
> So that side was being occupied. The only way to go was to walk through that little leeway. In my right hand is my bag with food. All I did was walk past her, put my bags on the table, as instructed, and walk and proceed to take my stuff off to have the pat search done, which is Ms. Woodland[13] doing right there. How I ended up on that side, I can't even remember that far back, how I ended up on that side, but I do recall me going this way and putting my bags on this table so when I'm going through the metal detector I have nothing in my pocket.

---

[12] The trooper also spoke with the other witnesses, and he indicated the video was consistent with those individuals' statements. *Id.* at 102.

[13] Woodland was not further identified in the trial testimony.

I'm adhering to what protocol is. I'm patting, make sure there's nothing that will set the metal detector off. I'm following instructions. My hand is up in the air, submitting to the pat search, which is standard coming in the halfway house. My objective was to make it past this point and get to my station, take my clothes off, get my food in the kitchen[.]

*Id.* at 110-111.

Based on this evidence, the trial court found the following:

[I]n addition to the circumstantial evidence of [Durant-El]'s knowledge and intent to commit aggravated harassment by prisoner, namely the testimony about his belligerent demeanor prior to being asked to submit to the breathalyzer test, the jury was also able to view a video of the incident itself. This evidence was hardly so weak and inconclusive that the jury, as finder of fact, could not make a determination as to [Durant-El]'s guilt.

Trial Court Opinion, 12/3/2018, at 4-5 (citation omitted).

It merits mention that while Durant-El presents this as a sufficiency claim, a substantial part of his argument is primarily challenging the weight of the evidence, insofar as he is asking this Court to reweigh the evidence, and view it in his favor as "reckless" behavior by focusing on certain evidence (*i.e.*, his cooperation with staff, the lack of immediate reaction by staff members). We decline to do so. *See Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) ("The fact-finder is free to believe all, part, or none of the evidence; an appellate court will not make its own assessment of the credibility of the evidence.").

Moreover, viewing the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude the testimony at trial

established Durant-El was responsible for aggravated harassment of McPherson pursuant to Section 2703.1. The evidence demonstrated that on the day in question, Durant-El attempted to bypass the re-entry procedure at the corrections center by going around McPherson. When she objected, he made a derogatory remark towards her. He subsequently spat in her face when she required in him to take a Breathalyzer test. Durant-El was familiar with the process of taking a Breathalyzer test as he testified that McPherson required him to take a Breathalyzer test on the previous day. Several witnesses testified that Durant-El seemed hostile and agitated, and appeared to use more force than was necessary when blowing into the breathalyzer device. Based on the totality of the evidence, one can reasonably infer when Durant-El spat saliva at McPherson while committed at WCCC: (1) he "intentionally" did so as it was his conscious object to engage in conduct of that nature and/or (2) he "knowingly" did so as he was aware that it was practically certain that his conduct would cause such a result. *See* 18 Pa.C.S. § 2703.1; 18 Pa.C.S. § 302.[14]

---

[14] Durant-El's reliance on *Rodriguez*, *supra*, and *Hecker*, *supra*, is misplaced. In *Rodriguez*, a panel of this Court determined the "jury could infer intent to inflict serious bodily injury from evidence that appellant and his confederates punched and kicked the lone victim while the victim was on the ground, stopping only when a police officer arrived." *Rodriguez*, 673 A.2d at 966-967. This does not suggest, as Durant-El would like us to find, that the conduct at issue must be repeated in order for it be considered intentional. In *Hecker*, the sufficiency issue on appeal was whether "evidence establishing he spat water upon [the corrections officer] could not, alone, 'support a

Furthermore, to the extent Lieutenant Sommers and Trooper Brownback testified that Durant-El told them it was either accidental or he just blew too hard, or his own testimony that McPherson was holding the device incorrectly or singling him out, the jury was free to accept or reject his statements and testimony. In finding Durant-El guilty of aggravated harassment by a prisoner, the jury clearly did not believe his version of how the incident transpired. As noted above, we are not permitted to substitute the fact-finder's judgment with our own. **See Stiles**, 143 A.3d at 981. Therefore, we conclude there was sufficient evidence to support Durant-El's aggravated harassment conviction. Accordingly, his first claim fails.

Durant-El's second issue on appeal challenges the weight of the evidence supporting his convictions. **See** Durant-El's Brief at 25. Specifically, he claims "the video surveillance refuted the testimonial evidence to such a substantial degree that the verdicts were against the weight of the evidence." **Id.** While Durant-El properly preserved his weight claim in a post-sentence

_____

reasonable conclusion that this water was or even contained any amount of saliva[,]' where [the defendant] had been spitting water continuously for approximately twelve minutes beforehand." **Hecker**, 153 A.3d at 1009. A panel of this Court concluded, "Testimonial and video evidence that [the defendant] spat a mouthful of water on the corrections officer supplied sufficient circumstantial evidence from which to infer that a mixture of water and saliva landed on the officer." **Id.** Again, while intent can be inferred based on specific facts concerning the defendant's conduct, **Hecker** does not stand for the proposition that repetitious and protracted acts are required to prove intent.

motion,[15] we are constrained to find that because the issue was dependent on the video, he has waived this argument for failure to ensure that the surveillance video was included in the certified record. ***See Petroll***, 696 A.2d at 836 (Pa. Super. 1997) (citation omitted), *affirmed*, 738 A.2d 993 (Pa. 1999). Accordingly, we need not address Durant-El's second and final claim further.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/09/2019

---

[15] ***See*** Pa.R.Crim.P. 607(A)(3).